1  Jennie Lee Anderson (SBN 203586)
   **ANDRUS ANDERSON LLP**
2  155 Montgomery Street, Suite 900
   San Francisco, CA 94104
3  Tel: (415) 986-1400
   Fax: (415) 986-1474
4  jennie@andrusanderson.com

5  *Attorneys for Plaintiff and the Proposed Classes*

6  (Additional Counsel on Signature Page)

7

8  **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  ALLISON BURKE, | Case No. 3:19-cv-7177 |
| 12             Plaintiff, | **CLASS ACTION COMPLAINT** |
| 13       v. | **JURY TRIAL DEMANDED** |
| 14  HEADWAY TECHNOLOGIES, INC., HUTCHINSON TECHNOLOGY INC., | |
| 15  MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO., LTD., NAT | |
| 16  PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK | |
| 17  SPRING CO., LTD., NHK INTERNATIONAL CORPORATION, NHK | |
| 18  SPRING (THAILAND) CO., LTD., NHK SPRING PRECISION (GUANGZHOU) CO., | |
| 19  LTD., SAE MAGNETICS (H.K.) LTD., AND TDK CORPORATION, | |
| 20 | |
| 21             Defendants. | |

22

23        Plaintiff, on behalf of herself and all others similarly situated (the "Classes" as defined

24  below), upon personal knowledge as to the facts pertaining to herself and upon information and

25  belief as to all other matters, based on the investigation of counsel, brings this class action against

26  Defendants Headway Technologies, Inc., Hutchinson Technology Inc., Magnecomp Precision

27  Technology Public Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.)

28  Co., Ltd., NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co.,

Ltd., NHK Spring Precision (Guangzhou) Co., Ltd., SAE Magnetics (H.K.) Ltd., and TDK Corporation for damages, injunctive relief and other relief pursuant to federal antitrust laws, state antitrust, unfair competition, consumer protection laws, and the laws of unjust enrichment, demand a trial by jury, and allege as follows:

## I.    NATURE OF THE ACTION

1.    This lawsuit arises out of a global conspiracy among Defendants and their co-conspirators to fix prices of and allocate market shares for hard disk drive ("HDD") suspension assemblies. As Assistant Attorney General of the Department of Justice ("DOJ") Antitrust Division Makan Delrahim described, HDD suspension assemblies are "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial."[1]

2.    HDD suspension assemblies are a component of hard disk drives, which use magnetism to store information electronically.  HDDs use recording heads, attached to sliders, to read from and write onto rapidly spinning disks.  HDD suspension assemblies hold the recording heads close to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.  HDDs containing HDD suspension assemblies are sold both as stand-alone devices and incorporated into a variety of ubiquitous electronics such as desktop computers, laptop computers, gaming systems, printers, and copy machines.

3.    Plaintiff seeks to represent all persons and entities who, during the period from and including May 2008 through such time as the anticompetitive effects of the Defendants' conduct ceased (the "Class Period"), indirectly purchased a product not for resale, which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

4.    At all relevant times, Defendants manufactured and sold HDD suspension assemblies throughout and into the United States.  As of 2016, Defendants TDK and NHK, along

---

[1] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives*, DOJ (Jul. 29, 2019), https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

with their subsidiaries, were the leading manufacturers of HDD suspension assemblies, with a combined worldwide market share of approximately 90%.

5.    From approximately May 2008 through at least April 2016, Defendants and their co-conspirators contracted, combined, or conspired to fix, raise, maintain, and/or stabilize prices of and allocate market shares for HDD suspension assemblies in the United States.[2]

6.    Since at least 2016, United States and foreign governments have investigated potential price-fixing of HDD suspension assemblies; in 2019, Defendant NHK (as defined below) admitted guilt. On July 29, 2019, the DOJ announced that Defendant NHK agreed to plead guilty and pay a $28.5 million fine for its role in a conspiracy to suppress and eliminate competition by fixing prices of HDD suspension assemblies sold in the United States and elsewhere.[3]

7.    On February 9, 2018, the Japanese Fair Trade Commission ("JFTC") issued a cease and desist order to both Defendants TDK and NHK and found that they substantially restrained competition in the HDD suspension assemblies market by agreeing to maintain sales prices, fining NHK Spring and one of their subsidiaries ¥1076.16 million yen.[4]

8.    Concurrently with the JFTC investigation, the DOJ opened an investigation regarding HDD suspension assemblies. Pursuant to that investigation, on July 26, 2016 Defendant Hutchinson Technology, Inc. ("HTI") received a letter from the DOJ requesting documents relating to the investigation. That same day, the JFTC and DOJ performed an on-site inspection of an NHK company.[5]

9.    Subsequently, in April 2018, Brazilian antitrust authorities launched an investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies. The international cartel allegedly shared data and allocated customers to maintain artificially high prices on HDD suspension assemblies used in hard

---

[2] Information, *United States of America v. NHK Spring Co., Ltd*, 2:19-cr-20503 (E.D. Mich. Jul. 29, 2019), ECF No. 1 ("NHK Information").
[3] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives, supra* note 1; NHK Information at 2-3.
[4] *The JFTC Issued a Cease and Desist Order and Surcharge Payment Orders to the Manufactures of Suspension for Hard Disk Drives,* JAPAN FAIR TRADING COMMISSION (Feb. 9. 2019), https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.html.
[5] *Consolidated Financial Statements, NHK Spring Co., Ltd. and Consolidated Subsidiaries,* NHK SPRING CO., LTD. (2018), https://www.nhkspg.co.jp/eng/ir/pdf/Annual%20Report%202018.pdf.

disks.

10.    The Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition for HDD suspension assemblies by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of HDD suspension assemblies sold in the United States and elsewhere.  The combination and conspiracy engaged in by the Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment.

11.    As a direct and proximate result of the anticompetitive and unlawful conduct alleged herein, Plaintiff and the Classes (as defined below) paid more during the Class Period for HDD suspension assemblies than they otherwise would have paid in a competitive market, and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

12.    Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). Plaintiff also asserts claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seeks to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

13.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants.

14.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C.

§ 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

15. On October 8, 2019, the Judicial Panel on Multidistrict Litigation ("JPML") centralized several related actions pertaining to the conspiracy alleged herein in this District before the Honorable Maxine M. Chesney as *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, MDL. No. 2918. The JPML recognized that Defendant Headway Technologies, Inc., has its headquarters in this District and that third-party discovery is expected to take place from two hard disk drive manufacturers headquartered in this District. This case is related to the actions in MDL No. 2918.

16. This Court has *in personam* jurisdiction over Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD suspension assemblies throughout the United States as a whole, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

17. Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

18. The activities of Defendants and their co-conspirators were within the flow of, and were intended to and did have a substantial effect on interstate commerce of the United States.

Defendants' products are sold in the flow of interstate commerce.

19.     HDD suspension assemblies manufactured abroad by Defendants and sold for use in products in the United States are goods brought into the United States for sale, and therefore constitute import commerce.  To the extent any HDD suspension assemblies are purchased in the United States, and such HDD suspension assemblies do not constitute import commerce, Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury in the United States.

20.     By reason of the unlawful activities hereinafter alleged, Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes.  Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the United States for HDD suspension assemblies, which conspiracy unreasonably restrained trade and adversely affected the market for HDD suspension assemblies.

21.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased a product in the United States not for resale which included an HDD suspension assembly.

CLASS ACTION COMPLAINT

# THE PARTIES

**Plaintiff**

22.     Plaintiff Allison Burke is a resident of Saint Paul, Minnesota.  During the Class Period, Ms. Burke purchased at least one HDD suspension assembly indirectly from at least one Defendant, and was injured in her business or property as a result of Defendants' unlawful conduct alleged herein.

**TDK Defendants**

23.     Defendant TDK Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. TDK Corporation – directly and/or through its affiliates, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

24.     Defendant Magnecomp Precision Technology Public Co., Ltd. ("MPT") is a Thai corporation with its principal place of business in Ayutthaya, Thailand. It is an affiliate of and wholly controlled by TDK Corporation. Defendant Magnecomp – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

25.     Defendant SAE Magnetics (H.K.) Ltd. is a Chinese corporation with its principal place of business in Hong Kong, China. Defendant SAE Magnetics – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

26.     Defendant HTI is a Minnesota corporation with its principal place of business in HTI, Minnesota. TDK Corporation acquired HTI on October 6, 2016.[6]  It is an affiliate of and wholly controlled by TDK Corporation.  HTI – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

---

[6] *TDK Corporation Announces Completion of Hutchinson Acquisition*, TDK GLOBAL (Oct. 6, 2016), https://www.tdk.com/corp/en/news_center/press/201610062540.htm.

1    27.    Defendant Headway Technologies, Inc. is a California corporation with its principal

2    place of business in Milpitas, California. It is an affiliate of and wholly controlled by TDK

3    Corporation. Defendant Headway Technologies – directly and/or through its affiliates –

4    manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased

5    throughout the United States, including in this District, during the Class Period.

6    **NHK Defendants**

7    28.    Defendant NHK Spring Co., Ltd. is a Japanese corporation with its principal place

8    of business in Yokohama, Japan. NHK Spring Co., Ltd. – directly and/or through its affiliates,

9    which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension

10   assemblies that were sold and purchased throughout the United States, including in this District,

11   during the Class Period.

12   29.    Defendant NHK International Corporation is a Michigan corporation with its

13   principal place of business in Novi, Michigan. It is an affiliate of and wholly controlled by NHK

14   Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled

15   – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased

16   throughout the United States, including in this District, during the Class Period.

17   30.    Defendant NHK Spring (Thailand) Co., Ltd. is a Thai corporation with its principal

18   place of business in Samutprakarn, Thailand. It is an affiliate of and wholly controlled by NHK

19   Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled

20   – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased

21   throughout the United States, including in this District, during the Class Period.

22   31.    Defendant NHK Spring Precision (Guangzhou) Co., Ltd. is a Chinese corporation

23   with its principal place of business in Guangzhou, China. It is an affiliate of and wholly controlled

24   by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or

25   controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and

26   purchased throughout the United States, including in this District, during the Class Period.

27   32.    Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan") is a Chinese

28   corporation with its principal place of business in Guangdong, China. It is an affiliate of and wholly

controlled by NHK Spring Co., Ltd. – Defendant Nat Dong Guan directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

33.    Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a Chinese corporation with its principal place of business in Hong Kong, China. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – Defendant NAT H.K. directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

**AGENTS AND CO-CONSPIRATORS**

34.    The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' business or affairs.

35.    Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Plaintiff reserves the right to name some or all of these persons as defendants at a later date.

36.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

37.    Each Defendant or co-conspirator acted as the principal, agent, or joint venture of, or for, other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged by Plaintiff. Each Defendant and co-conspirator that is a subsidiary of a foreign parent acts as the United States agent for HDD suspension assemblies made by its parent company.

1

**INTERSTATE TRADE AND COMMERCE**

2    38.    The conduct of Defendants and their co-conspirators has taken place in, and affected

3    the continuous flow of interstate trade and commerce of the United States in that, *inter alia*:

4        a.    During the Class Period, Defendants and their co-conspirators sold and

5    distributed HDD suspension assemblies throughout the United States;

6        b.    Defendants and their co-conspirators have each used instrumentalities of

7    interstate commerce to manufacture, sell, distribute, and/or market HDD suspension assemblies

8    throughout the United States;

9        c.    Defendants and their co-conspirators manufactured, sold, and shipped

10    substantial quantities of HDD suspension assemblies in a continuous and uninterrupted flow of

11    interstate commerce to customers; and

12        d.    The conspiracy alleged herein affected billions of dollars of commerce. During

13    the Class Period, Defendants collectively controlled approximately 90% of the global HDD

14    suspension parts market.  Defendants and their co-conspirators have inflicted antitrust injury by

15    artificially raising prices paid by Plaintiff and other entities who are themselves engaged in

16    commerce.

17

**FACTUAL ALLEGATIONS**

18    **A.    The HDD Suspension Assembly Industry.**

19    39.    HDD suspension assemblies are a critical component of HDDs.[7]   HDDs use

20    magnetism to write, retrieve and store vast amounts of information electronically.[8] HDDs are

21    installed in a variety of electronic products including desktop computers, laptop computers, copy

22    machines, and gaming systems.

23    //

24    //

25    //

26    ―――――――――――――――――
[7] *Hutchinson Shares Extend Slide on Continued FTC Antitrust Review*, THESTREET (Jan. 5, 2016),
27    https://www.thestreet.com/story/13412469/1/hutchinson-shares-keep-falling-on-extended-ftc-antitrust-review.html.
[8] *Hard drives*, EXPLAINTHATSTUFF, https://www.explainthatstuff.com/harddrive.html (last visited
28    Jul. 30, 2015).

1    40.    HDDs are comprised of, among other things, spinning magnetic disks and magnetic

2  heads that fly over the disks, reading and writing the information contained on the disks (*see* Figure

3  1).[9] HDD suspension assemblies hold the magnetic heads in position over the disks.[10] Thus, HDD

4  suspension assemblies are essential to the functioning of HDDs.

5       (Figure 1)[11]

6

7

8

9



10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[9] *Id.*; *Hard Disk Drives*, TEXAS A&M UNIVERSITY,
27  https://microtribodynamics.engr.tamu.edu/hard-disk-drives/ (last visited Jul. 30, 2019).
[10] *Hard drives*, EXPLAINTHATSTUFF.
28  [11] *Hard Disk Drives*, TEXAS A&M UNIVERSITY.

(Figure 2: HDD Suspension Assmebly)[12]



41.    The Defendants manufacture and sell HDD suspension assemblies in the United States and elsewhere to companies that install HDD suspension assemblies into HDDs. Consumers then purchase HDDs as either stand-alone products, or as part of larger systems, such as computers. In 2018, global unit shipments of HDDs were nearly 400 million.[13]  One study predicts HDD shipments will increase in the coming years.[14]

[12] *Suspension Assembly for Hard Disk Drive*, ENCYCLOPEDIA OF TRIBOLOGY (2013), https://link.springer.com/referenceworkentry/10.1007%2F978-0-387-92897-5_1140 (last visited Jul. 30, 2019).
[13] Arne Holst, *Global hard disk drive (HDD) shipments 1976-2022,* STATISTA (Feb. 22, 2019), https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/.
[14] *Id.*

**B.     Defendant NHK Agreed to Plead to Guilty and Pay a Criminal Fine for Conspiring to Fix Prices and Allocate Market Shares for HDD Suspension Assemblies.**

42.     On July 29, 2019, Defendant NHK Spring Co., Ltd. agreed to plead guilty and pay a $28.5 million fine for its role in the global conspiracy alleged herein.[15]  According to the criminal Information, from May 2008 to April 2016, NHK Spring Co., Ltd. engaged in a conspiracy consisting of a continuing agreement, understanding, and concert of action among Defendant NHK and its co-conspirators to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assemblies to be sold in the United States and elsewhere.[16]

43.     According to the Information, NHK Spring Co., Ltd. and its co-conspirators effectuated their conspiracy by, among other things:

a.     engaging in discussions and attending meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assemblies;

b.     exchanging HDD suspension assemblies pricing information;

c.     relying on their agreements not to compete and using the exchange pricing information to inform their negotiations with U.S. and foreign customers;

d.     selling HDD suspension assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices;

e.     accepting payment for HDD suspension assemblies sold in, or for delivery to the United States and elsewhere at collusive and noncompetitive prices.

**C.     Additional Government Investigations.**

44.     In July 2016, the JFTC raided both Defendants TDK and NHK based on suspicion that the two companies and or their subsidiaries fixed prices for HDD suspension components. Ultimately, on February 9, 2018, the JFTC issued a cease and desist order to both Defendants TDK

---

[15] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives*, , *supra* note 1.
[16] Information at 3.

and NHK and found that they substantially restrained competition in the HDD suspension assemblies market by agreeing to maintain sales prices, fining NHK Spring and one of their subsidiaries ¥1076.16 million yen.[17]

45.    Concurrently with the JFTC investigation, the DOJ opened an investigation regarding HDD suspension assemblies.  On July 26, 2016, Defendant HTI received a letter from the DOJ requesting documents relating to the investigation and expressed its intent to cooperate.  At the time HTI received the DOJ's letter, TDK Corporation's pending acquisition of HTI was under review by the U.S. Federal Trade Commission.

46.    Subsequently, in April 2018, Brazilian antitrust authorities launched an investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies.  The international cartel allegedly shared data and allocated customers to maintain artificially high prices on HDD suspension assemblies used in hard disks.

**D.    The Characteristics of the HDD Suspension Assembly Market Render the Conspiracy More Plausible.**

47.    Like other electronic product markets that have been the subject of antitrust investigations (cathode ray tubes, lithium ion batteries, and capacitors), the HDD suspension assemblies market has characteristics that make it susceptible to collusion, including high barriers to entry and high market concentration.  Together, these characteristics increase the probability and feasibility of anticompetitive conduct in the HDD suspension assemblies market.

**1.    The HDD Suspension Assemblies Market Has High Barriers to Entry.**

48.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants to the market seeking to benefit from the supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are much less likely to enter the market. Thus, barriers to entry help facilitate the formation and maintenance of cartels.

---

[17] *The JFTC Issued a Cease and Desist Order and Surcharge Payment Orders to the Manufactures of Suspension for Hard Disk Drives*, supra note 4.

49.    This is particularly true here where manufacturing HDD suspension assemblies requires the ability to produce precision assemblies in sufficient volume.  As Defendant HTI conceded, "We believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."[18]

50.    Moreover, increased demand for other types of data storage technology, such as those that utilize flash memory, limit opportunities for new entrants to the HDD suspension assembly market, which caters to hard disk drives.[19]

51.    Further, heavy capital investments are required in order to enter the market.  For example, HTI recently noted that it spent nearly $50 million between 2012 and 2014 on research and development.[20].

**2.    The HDD suspension assemblies Market is Highly Concentrated.**

52.    Upon information and belief, there were numerous suppliers of HDD suspension assemblies in the 1980s and the market was quite competitive as there were more than 20 producers of HDDs.  But by 2005, there were only five major producers left in the market.[21]

53.    A process of market consolidation began in the 1990s and by the mid-1990's the market had already become concentrated with HTI becoming the main producer of HDD suspension assemblies, holding at least a 65% market share and generating approximately $450 million per year in revenue.[22]

54.    Over the past 18 years, this trend has been further aggravated by two factors: (a) further consolidation among HDD suspension assemblies manufacturers, and (b) the vertical integration of companies like TDK that formerly depended on independent component suppliers in

---

[18] *Hutchinson Shares Extend Slide on Continued FTC Antitrust Review*, *supra* note 7.
[19] *Id.*
[20] See HTI Form 10-K for fiscal year ending September 28, 2014, http://www.annualreports.com/HostedData/AnnualReportArchive/h/NASDAQ_HTCH_2014.pdf.
[21] Igor Sestanj, *Consolidation of Hard Disk Drive Makers (Part 5) – Into The Future*, MY DATA RECOVERY LAB (Mar. 3, 2015), https://mydatarecoverylab.com/consolidation-of-hard-disk-drive-makers-part-5-into-the-future/.
[22] *5th Annual Technology Conference,* HUTCHINSON TECHNOLOGY INCORPORATED, http://media.corporate-ir.net/media_files/irol/61/61195/presentations/htch_51403.pdf (accessed Oct. 10, 2019) (power point).

their manufacturing of HDD suspension assemblies.

55.    In recent years, market consolidation has continued to the point where globally, there are now only two major suppliers of HDD suspension assemblies: TDK and NHK.

56.    In 2004, HTI held a 63% share of the HDD suspension assembly market and MPT held 18%.[23]

57.    In 2005, three companies—HTI, NHK Spring, and MPT—collectively controlled approximately 94% of the global HDD suspension assembly market. HTI held a 55% market share, NHK Spring held a 22% market share, and MPT held a 20% market share.[24]

58.    In 2007, TDK announced its acquisition of a majority share of MPT.  TDK acquired a formerly independent HDD suspension assemblies manufacturer in 2007 and had fully integrated that acquisition by 2009.

59.    By 2012, Defendants TDK Corp., NHK Spring, and HTI collectively controlled 96% of the global market.[25]

60.    In November 2015, TDK announced its acquisition of HTI. The acquisition was completed in October 2016. Following the acquisition, TDK's market share grew to 55-60% market share, and TDK noted that NHK Spring was its only competitor in the global market for HDD suspension assemblies.[26]

61.    HTI, at one time the largest manufacturer of HDD suspension assemblies, was acquired by Defendant TDK in 2016. Prior to the acquisition, HTI had gone through its own process of consolidation and was a principal supplier of HDD suspension assemblies to Western Digital Corporation (headquartered in San Jose, CA); Seagate Technology, LLC (Cupertino, CA); and SAE Magnetics, Ltd/TDK Corporation (Tokyo, Japan). That business is now contained within the TDK family.

---

[23] Chris Prystay, *Why Disk-Drive Parts Makers in Singapore Look Attractive*, WALL STREET JOURNAL (Jan. 6, 2004), https://www.wsj.com/articles/SB107332640744760100.
[24] MPT, Form 56-1, Part 3, *Business Operation of MPT and its Subsidiaries*, at page 10.
[25] Dr. Robert N. Castellano, *The Dynamics of the HDD Industry and Its Impact on CMP*, at 9, THE INFORMATION NETWORK (2012), https://pdfs.semanticscholar.org/c293/573aec70fec1d3abcd79f1e86bcdc005c044.pdf (power point).
[26] TDK Annual Report 2017, page 45.

### 3.  Homogeneity of Products and Inelasticity of Demand.

62.    HDD suspension assemblies are commodity-like products that are interchangeable among products of the same type and across manufacturers. One Defendant's product for a particular application is substitutable for another's. Forming and sustaining a cartel when the product in question is commodity-like makes it easier to agree on prices to charge and to monitor those prices once an agreement is formed.

63.    "Elasticity" describes the sensitivity of supply and demand to changes in one or the other such that demand is "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any, such that customers have nowhere to turn for alternative, cheaper products of similar quality and so continue to purchase despite a price increase.

64.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

65.    Demand for HDD suspension assemblies is highly inelastic because there are no close substitutes for these products. In addition, customers must purchase HDD suspension assemblies as an essential part of an HDD, or a product containing an HDD, even if the prices are kept at supra-competitive level.

### 4.  Defendants Maintained Close Business Relationships.

66.    Close business relations among Defendants provided ample opportunity to collude.

67.    TDK, through its wholly-owned subsidiary SAE Magnetics, and NHK Spring maintained a joint venture to manufacture HDD suspension assemblies until March 2015.[27]

68.    Furthermore, Defendants are geographically centralized, making collusion easy to accomplish.

69.    Opportunities to effectuate the conspiracy took place at meetings of IDEMA, the

---

[27] *TDK Subsidiary dissolve Joint Venture of HDD Suspension Manufacturing Company,* TDK GLOBAL (Apr. 1, 2015), https://www.tdk.com/corp/en/news_center/press/201504011768.htm.

International Disk Drive Equipment & Materials Association, to which NHK Spring Co., Ltd., SAE Magnetics, and TDK Corporation all belong. IDEMA has two operating subsidiaries, one in Japan and another in the United States. Among other things, IDEMA sponsors Diskcon industry conferences, such as the one held in Japan in July, 2010 and those held or to be held in the United States in October, 2011 and October of this year. One of the asserted benefits to belonging to IDEMA is that it offers "unique networking opportunities for all industry participants."

## **CLASS ACTION ALLEGATIONS**

70.     Plaintiff brings this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, indirectly purchased a product not for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

71.     Plaintiff also brings this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "Damages Class"):

> All persons and entities who, during the Class Period, in the Indirect Purchaser States[28] purchased a product not for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

72.     The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased HDD

---

[28] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

suspension assemblies directly or for resale.

73.    While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are (at least) thousands of members in each Class.

74.    Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

a.    Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD suspension assemblies sold in the United States;

b.    The identity of the participants of the alleged conspiracy;

c.    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d.    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

e.    Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

f.    Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

g.    Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

h.    The effect of the alleged conspiracy on the prices of HDD suspension assemblies sold in the United States during the Class Period;

i.    Whether Plaintiff and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

j.    Whether the Defendants and their co-conspirators fraudulently concealed the

conspiracy's existence from Plaintiff and the members of the Classes;

k.    The appropriate injunctive and related equitable relief for the Nationwide Class; and

l.    The appropriate class-wide measure of damages for the Damages Class.

75.    Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members of the Classes are similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices for HDD suspension assemblies purchased indirectly from the Defendants and/or their co-conspirators.

76.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

77.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

78.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

79.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

**PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY**

80.    Defendants' price-fixing conspiracy had the following effects, among others:

a.    Price competition has been restrained or eliminated with respect to HDD suspension assemblies;

b.    The prices of HDD suspension assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

c.    Indirect purchasers of HDD suspension assemblies have been deprived of free and open competition; and

d.    Indirect purchasers of HDD suspension assemblies paid artificially inflated prices for HDD suspension assemblies.

81.    During the Class Period, Plaintiff and the members of the Classes paid supra-competitive prices for HDD suspension assemblies. HDD manufacturers and other purchasers of HDD suspension assemblies passed on inflated prices to Plaintiff and the members of the Classes. Those overcharges have unjustly enriched Defendants.

82.    The markets for HDDs and HDD suspension assemblies are inextricably linked and intertwined because the market for HDD suspension assemblies exists to serve the HDD market. Without the HDDs, the HDD suspension assemblies have little to no value because they have no independent utility.

83.    HDD suspension assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD.  As a result, HDD suspension assemblies follow a traceable physical chain of distribution from the Defendants to Plaintiff and the members of the Classes, and costs attributable to HDD suspension assemblies can be traced through the chain of distribution to Plaintiff and the members of the Classes.

84.    Just as HDD suspension assemblies can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers of HDD suspension assemblies affect prices paid by indirect purchasers for HDDs containing HDD suspension assemblies.

85.    While even a monopolist would increase its prices when the cost of its inputs

CLASS ACTION COMPLAINT

increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.

86.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[29]

87.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[30]

88.    The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of HDD suspension assemblies and, as a direct and foreseeable result, the price of products containing HDD suspension assemblies.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by

---

[29] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).

[30] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106, (Cal. Sup. Ct. Aug. 29, 2000).

changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis—called regression analysis—is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of HDD suspension assemblies on prices for products containing HDD suspension assemblies even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of HDD suspension assemblies affects changes in the price of assembled products, such as computers.  In such models, the price of HDD suspension assemblies would be treated as an independent or explanatory variable. The model can isolate how changes in the price of HDD suspension assemblies impact the price of products containing HDD suspension assemblies while controlling for the impact of other price-determining factors.

89.    The precise amount of the overcharge impacting the prices of products containing HDD suspension assemblies can be measured and quantified.  Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiff and class members can be quantified.

90.    By reason of the violations of the antitrust law alleged herein, Plaintiff and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HDD suspension assemblies than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. Defendants Have Engaged in a Continuing Violation.

91.    Plaintiff repeats and re-alleges the allegations set forth above.

92.    Plaintiff and members of the Classes had no knowledge of the combination or

conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein.

93.    Plaintiff and members of the Classes are consumers who purchased HDDs containing HDD assemblies for their own use and not for resale. No information in the public domain was available to Plaintiff and members of the Classes.  Moreover, Plaintiff and members of the Classes had no direct contact or interaction with the Defendants and had no means from which they could have discovered that the Defendants were engaged in the conspiracy combination and conspiracy alleged herein.

94.    Throughout the Class Period, and continuing thereafter, no information in the public domain was available to Plaintiff and Class members that revealed sufficient information that any of the Defendants was involved in a criminal conspiracy to fix prices for HDD suspension assemblies.

95.    This Complaint alleges a continuing course of conduct and Defendants' unlawful conduct has inflicted continuing and accumulating harm within the applicable statutes of limitations.

96.    Each time Defendants engaged in an unlawful act complained of here, Defendants undertook an overt act that has inflicted harm on Plaintiff and other members of the Classes.

97.    For these reasons, the statutes of limitations applicable to Plaintiff's and the Classes' claims have been tolled with respect to the claims asserted in this complaint.

**B.    Fraudulent Concealment Tolled the Statute of Limitations.**

98.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the Classes.  Plaintiff and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein.

99.    Plaintiff and members of the Classes were unaware of Defendants' unlawful conduct, and did not know that they were paying supra-competitive prices for HDD suspension assemblies throughout the United States during the Class Period.  No information, actual or constructive, was

ever made available to Plaintiff and members of the Classes that they were being injured by Defendants' unlawful conduct.

100.    By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing.  HDD suspension assemblies are not exempt from antitrust regulation and, thus, Plaintiff and members of the Classes reasonably considered the HDD suspension assemblies industry to be a competitive industry.  Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' prices for HDD suspension assemblies.

101.    Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed.

102.    For these reasons, the statute of limitations applicable to Plaintiff's and the Classes' claims was tolled and did not begin to run.

## II.    VIOLATIONS ALLEGED

### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiff and the Nationwide Class)**

103.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

104.    Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

105.    The acts done by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

106.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD suspension assemblies, thereby creating anticompetitive

1   effects.

2      107.   The anticompetitive acts were intentionally directed at the United States market for

3   HDD suspension assemblies and had a substantial and foreseeable effect on interstate commerce

4   by raising and fixing prices for HDD suspension assemblies throughout the United States.

5      108.   The conspiratorial acts and combinations have caused unreasonable restraints in the

6   markets for HDD suspension assemblies.

7      109.   As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated

8   indirect purchasers in the Nationwide Class who purchased HDD suspension assemblies have been

9   harmed by being forced to pay inflated, supra-competitive prices for HDD suspension assemblies.

10     110.   In formulating and carrying out the alleged agreement, understanding and

11  conspiracy, Defendants and their co-conspirators did those things that they combined and conspired

12  to do, including but not limited to the acts, practices and course of conduct set forth herein.

13     111.   Defendants conspiracy had the following effects, among others:

14        a.   Price competition in the market for HDD suspension assemblies has been

15  restrained, suppressed, and/or eliminated in the United States;

16        b.   Prices for HDD suspension assemblies sold by Defendants and their co-

17  conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive

18  levels throughout the United States; and

19        c.   Plaintiff and members of the Nationwide Class who purchased HDD suspension

20  assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits

21  of free and open competition.

22     112.   Plaintiff and members of the Nationwide Class have been injured and will continue

23  to be injured in their business and property by paying more for HDD suspension assemblies

24  purchased indirectly from Defendants and their co-conspirators than they would have paid and will

25  pay in the absence of the conspiracy.

26     113.   The alleged contract, combination, or conspiracy is a *per se* violation of the federal

27  antitrust laws.

28     114.   Plaintiff and members of the Nationwide Class are entitled to an injunction against

1  Defendants, preventing and restraining the violations alleged herein.

2                          **SECOND CLAIM FOR RELIEF**
                          **Violation of State Antitrust Statutes**
3                    **(on behalf of Plaintiff and the Damages Class)**

4       115.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

5       116.    During the Class Period, Defendants and their co-conspirators engaged in a

6  continuing contract, combination or conspiracy with respect to the sale of HDD suspension

7  assemblies in unreasonable restraint of trade and commerce and in violation of the various state

8  antitrust and other statutes set forth below.

9       117.    The contract, combination, or conspiracy consisted of an agreement among

10  Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially

11  supra-competitive levels the prices for HDD suspension assemblies and to allocate customers for

12  these products in the United States.

13      118.    In formulating and effectuating this conspiracy, the Defendants and their co-

14  conspirators performed acts in furtherance of the combination and conspiracy, including:

15           a.    participating in meetings and conversations among themselves in the United

16  States and elsewhere during which they exchanged pricing information and agreed to price HDD

17  suspension assemblies at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize

18  effective prices paid by Plaintiff and members of the Damages Class with respect to HDD

19  suspension assemblies sold in the United States;

20           b.    allocating customers and markets for HDD suspension assemblies in the United

21  States in furtherance of their agreements; and

22           c.    participating in meetings and conversations among themselves in the United

23  States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

24      119.    Defendants and their co-conspirators engaged in the actions described above for the

25  purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and

26  to allocate customers with respect to HDD suspension assemblies.

27      120.    Defendants' anticompetitive acts described above were knowing and willful and

28  constitute violations or flagrant violations of the following state antitrust statutes.

121.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

    a.   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    b.   During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

    c.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.   By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

122.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

    a.   During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, HDD suspension assemblies at supra-competitive levels.

    b.   The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, HDD suspension assemblies.

    c.   For the purpose of forming and effectuating the unlawful trust, the Defendants

and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing, and pegging the price of HDD suspension assemblies; and (2) allocating among themselves the production of HDD suspension assemblies.

d.    The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of HDD suspension assemblies has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for HDD suspension assemblies sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased HDD suspension assemblies directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

e.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

123.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

124. The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

a. Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

125. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

a. Defendants' combinations or conspiracies had the following effects: (1) HDD

suspension assemblies price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

126.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

127. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq*.

a. Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

128. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

a. Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

129. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

a. Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq*.

130. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq*.

a. Defendants' combinations or conspiracies had the following effects: (1) HDD

1   suspension assemblies price competition was restrained, suppressed, and eliminated throughout

2   Nebraska; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

3   artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were

4   deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid

5   supra-competitive, artificially inflated prices for HDD suspension assemblies.

6          b.    During the Class Period, Defendants' illegal conduct substantially affected

7   Nebraska commerce.

8          c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

9   members of the Damages Class have been injured in their business and property and are threatened

10  with further injury.

11         d.    By reason of the foregoing, Defendants have entered into agreements in

12  restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, Plaintiff

13  and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§

14  59-801, *et seq*.

15         131.   Defendants have entered into an unlawful agreement in restraint of trade in violation

16  of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq*.

17         a.    Defendants' combinations or conspiracies had the following effects: (1) HDD

18  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

19  Nevada; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

20  artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were

21  deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid

22  supra-competitive, artificially inflated prices for HDD suspension assemblies.

23         b.    During the Class Period, Defendants' illegal conduct substantially affected

24  Nevada commerce.

25         c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

26  members of the Damages Class have been injured in their business and property and are threatened

27  with further injury.

28         d.    By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

132.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

a.  Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.  During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

133.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

a.  Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq*.

134.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies when they purchased HDDs containing HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

135.    Defendants have entered into an unlawful agreement in restraint of trade in violation

of the North Carolina General Statutes §§ 75-1, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

c.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

136.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened

1    with further injury.

2        d.    By reason of the foregoing, Defendants have entered into agreements in

3    restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly,

4    Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent.

5    Code §§ 51-08.1-01, *et seq*.

6        137.    Defendants have entered into an unlawful agreement in restraint of trade in violation

7    of the Oregon Revised Statutes §§ 646.705, *et seq*.

8        a.    Defendants' combinations or conspiracies had the following effects: (1) HDD

9    suspension assemblies price competition was restrained, suppressed, and eliminated throughout

10   Oregon; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

11   artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were

12   deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid

13   supra-competitive, artificially inflated prices for HDD suspension assemblies.

14       b.    During the Class Period, Defendants' illegal conduct had a substantial effect on

15   Oregon commerce.

16       c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

17   members of the Damages Class have been injured in their business and property and are threatened

18   with further injury.

19       d.    By reason of the foregoing, Defendants have entered into agreements in

20   restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiff

21   and members of the Damages Class seek all relief available under Oregon Revised Statutes §§

22   646.705, *et seq*.

23       138.    Defendants have entered into an unlawful agreement in restraint of trade in violation

24   of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

25       a.    Defendants' combinations or conspiracies had the following effects: (1) HDD

26   suspension assemblies price competition was restrained, suppressed, and eliminated throughout

27   South Dakota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized

28   at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class

were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

139.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

c.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

140.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq*.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq*.

141.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

1  members of the Damages Class have been injured in their business and property and are threatened

2  with further injury.

3          d.    By reason of the foregoing, Defendants have entered into agreements in

4  restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiff and

5  members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et*

6  *seq*.

7      142.    Defendants have entered into an unlawful agreement in restraint of trade in violation

8  of the West Virginia Code §§ 47-18-1, *et seq*.

9          a.    Defendants' combinations or conspiracies had the following effects: (1) HDD

10  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

11  West Virginia; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized

12  at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class

13  were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class

14  paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

15          b.    During the Class Period, Defendants' illegal conduct had a substantial effect on

16  West Virginia commerce.

17          c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

18  members of the Damages Class have been injured in their business and property and are threatened

19  with further injury.

20          d.    By reason of the foregoing, Defendants have entered into agreements in

21  restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiff and

22  members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et*

23  *seq*.

24      143.    Defendants have entered into an unlawful agreement in restraint of trade in violation

25  of the Wisconsin Statutes §§ 133.01, *et seq*.

26          a.    Defendants' combinations or conspiracies had the following effects: (1) HDD

27  suspension assemblies price competition was restrained, suppressed, and eliminated throughout

28  Wisconsin; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at

artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

144.   Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiff and members of the Damages Class have paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

145.   In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiff and the members of the Damages Class.

146.   Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiff and the Damages Class)**

147.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

148.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

149.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

a.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

b.    The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

c.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.    During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

e.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

150.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, et

1    seq.:

2         a.    During the Class Period, Defendants marketed, sold, or distributed HDD

3    suspension assemblies in California, and committed and continue to commit acts of unfair

4    competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code,

5    by engaging in the acts and practices specified above.

6         b.    This claim is instituted pursuant to Sections 17203 and 17204 of the California

7    Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged

8    herein, that violated Section 17200 of the California Business and Professions Code, commonly

9    known as the Unfair Competition Law.

10        c.    Defendants' conduct as alleged herein violates Section 17200. The acts,

11   omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein,

12   constituted a common, continuous, and continuing course of conduct of unfair competition by

13   means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of

14   California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the

15   following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations

16   of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

17        d.    Defendants' acts, omissions, misrepresentations, practices, and non-

18   disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the

19   California Business and Professions Code, and whether or not concerted or independent acts, are

20   otherwise unfair, unconscionable, unlawful or fraudulent;

21        e.    Defendants' acts or practices are unfair to consumers of HDD suspension

22   assemblies (or products containing them) in the State of California within the meaning of Section

23   17200, California Business and Professions Code;

24        f.    Defendants' acts and practices are fraudulent or deceptive within the meaning

25   of Section 17200 of the California Business and Professions Code;

26        g.    Plaintiff and members of the Damages Class are entitled to full restitution

27   and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have

28   been obtained by Defendants as a result of such business acts or practices;

CLASS ACTION COMPLAINT

h.   The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future;

i.   The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for HDD suspension assemblies (or products containing them). Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

j.   The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

k.   As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

151.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in the District of Columbia.

b.   The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff was not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge

1 and there was no alternative source of supply through which Plaintiff could avoid the overcharges.

2 Defendants' conduct with regard to sales of HDD suspension assemblies, including their illegal

3 conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and

4 overcharge consumers, was substantively unconscionable because it was one-sided and unfairly

5 benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair

6 advantage of Plaintiff. The suppression of competition that has resulted from Defendants'

7 conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was

8 a gross disparity between the price paid and the value received for HDD suspension assemblies.

9       c.     Defendants' unlawful conduct had the following effects: (1) HDD suspension

10 assemblies price competition was restrained, suppressed, and eliminated throughout the District of

11 Columbia; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at

12 artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the

13 Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the

14 Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

15       d.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

16 members of the Damages Class have been injured and are threatened with further injury.

17 Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation

18 of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the

19 Damages Class seek all relief available under that statute.

20    152.   Defendants have engaged in unfair competition or unfair, unconscionable, or

21 deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act,

22 Fla. Stat. §§ 501.201, *et seq.*

23       a.     Defendants' unlawful conduct had the following effects: (1) HDD suspension

24 assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2)

25 HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

26 levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free

27 and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive,

28 artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

153. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

a. Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

154. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

a. Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

b. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold,

distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

   c. Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

   d. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class were injured and are threatened with further injury.

   e. Certain of the Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

   f. By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and members of the Damages Class to multiple damages.

  155. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

   a. Plaintiff and members of the Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

   b. Defendants engaged in the conduct described herein in connection with the sale of HDD suspension assemblies in trade or commerce in a market that includes Missouri.

   c. Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Missouri, which conduct constituted

1  unfair practices in that it was unlawful under federal and state law, violated public policy, was

2  unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of

3  the Damages Class.

4        d.    Defendants concealed, suppressed, and omitted to disclose material facts to

5  Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and

6  artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and omitted

7  facts would have been important to Plaintiff and members of the Damages Class as they related to

8  the cost of HDD suspension assemblies they purchased.

9        e.    Defendants misrepresented the real cause of price increases and/or the absence

10  of price reductions in HDD suspension assemblies by making public statements that were not in

11  accord with the facts.

12        f.    Defendants' statements and conduct concerning the price of HDD suspension

13  assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members

14  of the Damages Class to believe that they were purchasing HDD suspension assemblies at prices

15  established by a free and fair market.

16        g.    Defendants' unlawful conduct had the following effects: (1) HDD suspension

17  assemblies  price competition was restrained, suppressed, and eliminated throughout Missouri; (2)

18  HDD suspension assemblies  prices were raised, fixed, maintained, and stabilized at artificially

19  high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of

20  free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-

21  competitive, artificially inflated prices for HDD suspension assemblies.

22        h.    The foregoing acts and practices constituted unlawful practices in violation of

23  the Missouri Merchandising Practices Act.

24        i.    As a direct and proximate result of the above-described unlawful practices,

25  Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

26        j.    Accordingly, Plaintiff and members of the Damages Class seek all relief

27  available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020,

28  which prohibits "the act, use or employment by any person of any deception, fraud, false pretense,

false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

156.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

a.      Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies  price competition was restrained, suppressed, and eliminated throughout Montana; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

157.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

a.      Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

b.      The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for HDD suspension assemblies as set forth in N.M.S.A., § 57-12-2E. Plaintiff was not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

c.      Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

e.      As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.

f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

158.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

b.    Defendants and their co-conspirators made public statements about the prices of HDD suspension assemblies and products containing HDD suspension assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for HDD suspension assemblies and products containing HDD suspension assemblies; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

c.    Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased HDD suspension assemblies were misled to believe that they were paying a fair price for HDD suspension assemblies or the price increases for HDD suspension assemblies were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

d.    Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have an impact on New York consumers and not just the Defendants' direct customers.

e.    Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have a broad impact, causing consumer class members who indirectly purchased HDD suspension assemblies to be injured by paying more for HDD suspension assemblies than they would have paid in the absence of Defendants' unlawful trade acts and

1  practices.

2      f.      The conduct of the Defendants described herein constitutes consumer-oriented

3  deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in

4  consumer injury and broad adverse impact on the public at large, and harmed the public interest of

5  New York State in an honest marketplace in which economic activity is conducted in a competitive

6  manner.

7      g.      Defendants' unlawful conduct had the following effects: (1) HDD suspension

8  assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2)

9  HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high

10 levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of

11 free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-

12 competitive, artificially inflated prices for HDD suspension assemblies.

13     h.      During the Class Period, Defendants' marketed, sold, or distributed HDD

14 suspension assemblies in New York, and Defendants' illegal conduct substantially affected New

15 York commerce and consumers.

16     i.      During the Class Period, each of the Defendants named herein, directly, or

17 indirectly and through affiliates they dominated and controlled, manufactured, sold and/or

18 distributed HDD suspension assemblies in New York.

19     j.      Plaintiff and members of the Damages Class seek all relief available pursuant

20 to N.Y. Gen. Bus. Law § 349 (h).

21     159.   Defendants have engaged in unfair competition or unfair, unconscionable, or

22 deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

23     a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by

24 affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices

25 at which HDD suspension assemblies were sold, distributed or obtained in North Carolina and took

26 efforts to conceal their agreements from Plaintiff and members of the Damages Class.

27     b.      Defendants' price-fixing conspiracy could not have succeeded absent deceptive

28 conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation,

implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of HDD suspension assemblies created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

c.      The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d.      Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

e.      During the Class Period, Defendants' marketed, sold, or distributed HDD suspension assemblies in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

f.      During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD suspension assemblies in North Carolina.

g.      Plaintiff and members of the Damages Class seek actual damages for their

injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

160.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

a.    Members of this Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Rhode Island.

c.    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' prices for HDD suspension assemblies were competitive and fair.

d.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

e.    As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set

forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f.      Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD suspension assemblies, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing HDD suspension assemblies at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of HDD suspension assemblies they purchased.

g.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

161.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

162.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute. Defendants have engaged

in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, et seq.:

a.    Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Vermont.

b.    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning their unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their prices for HDD suspension assemblies were competitive and fair.

c.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.    As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

e.    Defendants' deception, including their omissions concerning the price of HDD suspension assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD suspension assemblies at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(on behalf of Plaintiff and members of the Damages Class)**

163.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

164.    Plaintiff brings this claim under the laws of all states listed in the Second and Third Claims, *supra*.

165.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD suspension assemblies.

166.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff of the members of the Damages Class for HDD suspension assemblies.

167.    Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a pro rata basis.

168.    Pursuit of any remedies against the firms from which Plaintiff and the members of the Damages Class purchased HDDs containing HDD suspension assemblies subject to Defendants' conspiracy would have been futile.

## PRAYER FOR RELIEF

Accordingly, Plaintiff respectfully requests that:

169.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

170.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be

adjudged and decreed:

a.     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

b.     A *per se* violation of Section 1 of the Sherman Act;

c.     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

d.     Acts of unjust enrichment by Defendants as set forth herein.

171.     Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

172.     Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

173.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

174.     Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

175.     Plaintiff and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

176.    Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

177.    Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues so triable.

Dated:  October 30, 2019

*/s/ Jennie lee Anderson*
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel: (415) 986-1400
Fax: (415) 986-1474
jennie@andrusanderson.com

Kevin Landau (*pro hac vice* forthcoming)
Miles Greaves (*pro hac vice* forthcoming)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
klandau@tcllaw.com
mgreaves@tcllaw.com

Samuel J. Strauss (*pro hac vice* forthcoming)
**TURKE & STRAUSS LLP**
613 Williamson Street #201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com

*Attorneys for Plaintiff and the Proposed Classes*

CLASS ACTION COMPLAINT